UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX KEOVILAI,<br><br>  Plaintiff,<br><br>   v.<br><br>KILOLO KIJAKAZI, acting Commissioner of Social Security,<br><br>  Defendant. | No. 1:20-cv-01487-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Doc. 18)** |

**I.     Introduction**

Plaintiff Alex Keovilai ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the United States Magistrate Judge.[1]  *See* Docs. 18, 21. After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision. Plaintiff's appeal is therefore denied.

**II.    Factual and Procedural Background[2]**

On September 26, 2016 Plaintiff applied for disability insurance benefits alleging disability as of October 31, 2008. The Commissioner denied the application initially on December 15, 2016 and on reconsideration on March 8, 2017. AR 133, 144. Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on December 4, 2018. AR 46–80. On March 15, 2019, the ALJ issued a decision denying Plaintiff's application. AR 24–40. The Appeals Council denied his claim via decision issued April 24, 2020. AR 6–16. On October 19, 2020

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge. *See* Docs. 8 and 10.

[2] The Court has reviewed the relevant portions of the administrative record including the medical, opinion and testimonial evidence about which the parties are well informed, which will not be exhaustively summarized. Relevant portions thereof will be referenced in the course of the analysis below when relevant to the parties' arguments.

Plaintiff filed a complaint in this Court. Doc. 1.

### III. **The Disability Standard**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-

(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**IV.     The ALJ's Decision**

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of October 31, 2008. AR 27. At step two the ALJ found that Plaintiff had the following severe impairments: disorder of the spine, diabetes mellitus with fatigue, and anal fissure. AR 28. At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 31.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) with the following limitations: 10-15 minute breaks every two hours, occasional "posturals," no exposure to environmental hazards (such as unprotected heights, fast or dangerous machinery, or commercial vehicles), requires easy access to a bathroom facility, limited to non-complex tasks, can read and write simple sentences only, communicate in simple words only, and has limited English skills. AR 32–38.

At step four the ALJ concluded that Plaintiff could not perform his past relevant work as a sheet rock tapper which required medium exertional capacity. AR 39. At step five, in reliance on

the VE's testimony, the ALJ concluded that Plaintiff could perform other jobs existing in significant numbers in the national economy. The ALJ omitted the representative jobs from her decision, though the VE did testify such jobs exist, and the Appeals Council included the same in its decision, namely: laundry sorter, housekeeper, produce sorter, and small parts assembler. AR 12, 75–76. The ALJ concluded that Plaintiff was not disabled at any time since his alleged onset date of October 31, 2008. AR 40.

## V. Issues Presented

Plaintiff asserts two related claims of error, the first of which is not in dispute: 1) that the ALJ erred by failing to exhibit and weigh Dr. Michiel's opinion, and 2) that the Appeals Council's written decision did not cure the error. Br. at 1, Doc. 18.

### A. Dr. Michiel's Opinion

#### 1. Applicable Law

Before proceeding to step four the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations," and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

For applications filed before March 27, 2017, the regulations provide that more weight is generally given to the opinion of treating physicians, which are given controlling weight when well supported by clinical evidence and not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2); *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996) (noting that the opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in residual functional capacity determinations).

An ALJ may reject an uncontradicted opinion of a treating or examining physician only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining physician may be rejected for "specific and legitimate" reasons. *Id.* at 830. In either case, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Regardless of source, all medical opinions that are not given controlling weight are evaluated using the following factors: examining relationship, treatment relationship, supportability, consistency, and specialization. 20 C.F.R. § 404.1527(c). The opinion of a non-examining physician (such as a state agency physician) may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in

the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

### 2. <u>Analysis</u>

On December 7, 2018, Dr. Michiel conducted a consultative psychiatric examination of Plaintiff at the request of the agency. AR 724–27. Dr. Michiel identified diagnoses of adjustment disorder with emotional features, depression, and anxiety. AR 726–27. Dr. Michiel opined Plaintiff could: maintain attention and concentration to carry out simple job instructions; relate and interact with coworkers, supervisors, and the general public while in the routine setting of performing simple job instructions. AR 727. Dr. Michiel opined that Plaintiff was unable to maintain attention and concentration to carry out an extensive variety of technical and/or complex instructions. AR 727.

In addition to the narrative opinion accompanying the mental status examination, Dr. Michiel also completed a pre-printed Medical Statement of Ability To Do Work-Related Activities (Mental), in which Dr. Michiel checked the box corresponding to moderate limitations for the following abilities: carry out complex instructions; make judgments on complex work related decisions; respond appropriately to usual work situations and changes in a routine work setting. AR 728–29.

The ALJ failed to exhibit or discuss Dr. Michiel's opinion, which Defendant and the Appeals Council acknowledged. Though an ALJ "need not discuss all evidence presented," the ALJ must explain why "significant probative evidence has been rejected." *Vincent ex rel. v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). As one of two psychiatric examining opinions in the record, Dr. Michiel's opinion was undoubtedly probative of Plaintiff's mental RFC formulated prior to step four, and probative of the severity of Plaintiff's mental impairments considered at step two. The omission of the same from the ALJ's discussion was error. The question at issue therefore is whether the Appeals Council cured the error in its written decision.

In rejecting Dr. Michiel's opinion, the Appeals Council stated as follows:

> The file indicates that this report of psychological consultative examination (CE), from Dr. Michiel, dated December 7, 2018 was not exhibited; nor was it discussed in the decision. The results of this report were based solely on a one-time evaluation, with observations. No medical records were reviewed. The results of the exam showed no objective signs of mental impairment. The examination was conducted with the help of a translator, but the claimant did report that he drives a car, attended college in Laos, and also attended school studying English as a second language. Dr. Michiel opined that the claimant is able to maintain attention and concentration, carry out simple job instructions, relate and interact with coworkers, supervisors and the general public in the routine setting, and perform simple job instructions. Dr. Michiel did not explain the opinion that the claimant could perform simple tasks. The results of the examination do not clarify why this conclusion was reached. Dr. Michiel further opined that the claimant is unable to maintain attention and concentration in order to carry out an extensive variety of technical and/or complex instructions, and has no restrictions in performing activities of daily living. Dr. Michiel did not explain why the claimant was so limited, other than to attribute this to an inability to concentrate and attend to tasks sufficiently to perform such tasks. However, the results of the examination do not support this conclusion because the examination results showed no deficits. The examination report indicates however, that only simple tasks were asked of the claimant during the examination. As such, there was no indication that the claimant was limited in his performance of such simple mental tasks. Tr. 10-11.
>
> . . .

Plaintiff's analysis of the Appeals Council's pertinent reasoning begins on page 7 of his 7 page brief. Br. at 7, Doc. 18.

To start, Plaintiff appropriately takes issue with the Appeals Council's observation that Dr. Michiel's opinion was based on a one-time examination with no medical records reviewed. To the extent the observation was intended to bolster the reasoning for rejecting the opinion, the critique is not well taken. The one-time nature of the examination is an inherent characteristic of a consultative examination which the Agency requested.[3] Moreover, an identical observation was

---

[3] Consultative examiners are not one of the claimant's treating providers and generally are not provided with medical records to review. The Disability Determination Service (DDS) physicians do review the claimant's medical file at the initial and reconsideration levels but do not examine the claimant. Moreover, their review often substantially predates the administrative hearing. A consultative examination and associated opinion provides a more contemporaneous appraisal of the claimant's functionality as of the date of the examination. Dr. Michiel's opinion did not purport to do more than that here. AR 729.

conspicuously absent when the Appeals Council and the ALJ discussed the consultative examining opinion of Dr. Lewis, whose opinion supported a non-disability finding as it was also a one-time examination with no medical records reviewed. AR 11, 36. Although the nature and extent of the treating or examining relationship is a relevant regulatory factor to consider, it does not bear mentioning unless it is a relevant basis upon which to distinguish between the opinions in the record.

Secondly, Plaintiff appropriately takes issue with the Appeals Council's observations that he drives, attended college in Laos, and speaks English, which Plaintiff characterizes as "unrelated and benign findings." Br. at 7. Education and language ability are vocational considerations affecting the available jobs at step five, but those considerations are distinct from the severity of Plaintiff's adjustment disorder, depression, anxiety and the mental limitations attributable to those impairments.

Moreover, the ALJ's description of Plaintiff's education and language ability during the hearing paints a different picture than the one implied by the Appeals Council's language. *See* AR 79 (introducing the first hypothetical posed to the VE, and asking the VE to consider someone who is "currently 51 years old. He has a *very limited* education in that he can only read, write and speak *very simple limited* English.") (emphasis added). To the extent the Appeals Council's observations concerning education and language ability were intended to bolster the conclusion that Dr. Michiel's opinion was not supported, the point is not well taken.

Thirdly, Plaintiff takes issue with the Appeals Council's conclusion that the results of the mental status examination did not support the opinion. Plaintiff contends that the "Appeals Council's interpretation is factually inaccurate and attempts to override Dr. Michiel's ability to interpret his own assessment." Br. at 7. The Court disagrees.

The Appeals Council's statement that "examination results showed *no* deficits" was perhaps

a bit of an overstatement. Plaintiff underscores objective observations including restricted affect and fair eye contact. AR 725–26. The former is reflective of some degree of deficiency. The only other mental status examination results potentially suggestive of deficiencies, however, were depressed mood, two out of three object recall after five minutes, and four out of five digit recall in reverse. These are scarcely supportive of the notion that Plaintiff had moderate limitations in multiple areas of mental functioning attributable to his adjustment disorder, anxiety, and depression. In every other respect however, Plaintiff's mental status examination findings were normal, including: 1) orientation to person, place and date; 2) five out of five digit span forward; 3) three out of three immediate object recall; 4) repeat and solve a simple math question; 5) said he would call 911 if there was a neighborhood fire (judgment); and, 5) could recall what he had to eat the night before, and the birthdays of his three children. AR 726.

If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). Plaintiff's point is well taken that Dr. Michiel (not the Court or the Agency) is best positioned to interpret the findings of the mental status examination Dr. Michiel performed and translate the same into functional terms. And, in close cases where the examination reveals substantial deficiencies but many normal findings as well, the deferential principal quoted above from *Jamerson* is not always appropriate, and the physician's interpretation of his own examination should perhaps control (all other things being equal). Here, however, it is sufficiently apparent even to a layperson that the mental status examination results are not suggestive of moderate mental limitations as to task complexity, work-related judgment, and ability to respond to routine changes in a work setting, as opined by Dr. Michiel.

Moreover, the Appeals Council noted two additional factors which Plaintiff does not acknowledge. First, the Appeals Council appropriately noted that the basis for the identified

limitations was not explained.[4]  Indeed, at question 1 (after the limitations are identified) the form asks the physician to "Identify the factors (e.g., the particular signs, laboratory findings, or other factors described above) that support your assessment."  AR 728.  Dr. Michiel did not identify any particular signs or findings but simply repeated diagnoses already identified, namely "adjustment disorder with emotional features, depression, and anxiety."  *Id.*  The same question was asked again at question 2, and Dr. Michiel wrote "[same] as in 1."   AR 729.  The same question was asked again at question 3, and Dr. Michiel wrote "history, evaluation" without specifying what aspects of the history or evaluation supported the opinion.  *Id.*  The agency may reject opinions that are unexplained.  *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012) ("We have held that the ALJ may 'permissibly reject [ ] . . . check-off reports[5] that [do] not contain any explanation of the bases of their conclusions'").

Finally, the Appeals Council noted that Dr. Michiel's opinion was undermined by the prior consultative examining opinion of Dr. Lewis on November 12, 2016, which identified no such limitations.  AR 11 (citing AR 504–05).  Granted, Dr. Lewis's opinion was issued much earlier than Dr. Michiel's, but there is no identified evidence suggesting that Plaintiff's mental conditioned worsened in the interim.  The Appeals Council's rejection of Dr. Michiel's opinion was further buttressed by the opinion of Dr. Lewis, which was based on her own examination of Plaintiff.  *See*

---

[4] To be precise, the Appeals Council's articulated reasoning was only directed at the narrative opinion in which Dr. Michiel identified limitations related to task complexity, not to the additional check-the-box Medical Source Statement of Ability To Do Work Related Activities in which Dr. Michiel identified additional limitations related to work related judgment and responding to changes in work setting.  Plaintiff did not separately challenge the Appeals Council's lack of acknowledgment of those additional identified moderate limitations, or the Appeals Council's implicit rejection of the same.  Although the Court may raise issues *sua sponte* to prevent a manifest injustice, the Court finds no such injustice would take place here.  The Appeals Council's reasoning is equally applicable to the limitations as to judgment and responding to changes in work setting as the objective mental status examination does not support such limitations, and the basis for those limitations was equally unexplained by Dr. Michiel.  Notwithstanding that there is a gap in the Appeals Council's reasoning which the Court has identified and is filling, and because Plaintiff did not independently identify that gap as a basis for remand, and because that the gap is easily filled, the Court will not remand on that basis.

[5] Much like in *Molina*, Defendant criticizes the opinion as an unexplained "check-box questionnaire."  The form is a pre-printed SSA approved form (OMB No. 0960-0660) which asks for the limitations to be identified by checking boxes.  It also asks for narrative explanations supporting those limitations.  It is the lack of such an explanation, not the check the box format, that justifies rejecting the opinion.

10

*Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) ("To the extent that other physicians' conflicting opinions rested on independent, objective findings, those opinions could constitute substantial evidence.").

The Appeals Council's rejection of Dr. Michiel's opinion was supported by specific and legitimate reasoning, namely: 1) examination results not suggestive of the identified limitations, 2) no explanation provided by Dr. Michiel explaining the basis for the opinion, and 3) Dr. Lewis's contrary consultative opinion.

### VI. Conclusion and Order

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied. The Clerk of Court is directed to enter judgment in favor of Defendant Kilolo Kijakazi, acting Commissioner of Social Security, and against Plaintiff Alex Keovelai.

IT IS SO ORDERED.

| Dated: **May 20, 2022** | **/s/ Gary S. Austin** |
| --- | --- |
| | UNITED STATES MAGISTRATE JUDGE |